IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| LYNN GENE LAMASTERS,<br>Petitioner,<br>vs.<br>WARDEN, IOWA STATE PENITENTIARY,<br>Respondent. | No. C13-2003<br>REPORT AND RECOMMENDATION |

---

TABLE OF CONTENTS

*I.* *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.* *PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.* *RELEVANT FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
- *A.* *Direct Appeal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
- *B.* *Application for Post-Conviction Relief* . . . . . . . . . . . . . . . . . . . . 5
- *C.* *Appeal of Post-Conviction Denial* . . . . . . . . . . . . . . . . . . . . . . 8

*IV.* *STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*V.* *DISCUSSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
- *A.* *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . 12
- *B.* *Jury Misconduct* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
- *C.* *Admission of Perjured Testimony* . . . . . . . . . . . . . . . . . . . . . . 14
- *D.* *Bifurcation and Mental-Health Defenses* . . . . . . . . . . . . . . . . . . 14
- *E.* *Unconstitutional Search and Seizure* . . . . . . . . . . . . . . . . . . . . 15
- *F.* *Jury Selection and Media Exposure* . . . . . . . . . . . . . . . . . . . . . 16

*VI.* *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*VII.* *RECOMMENDATION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## *I. INTRODUCTION*

On December 10, 2012, Petitioner Lynn Gene Lamasters filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody (docket number 1).[1] On January 30, 2013, the Court ordered Lamasters to file an amended petition, setting forth his grounds for relief, not later than March 1, 2013. Lamasters filed an amended petition (docket number 10) on February 11.

On August 14, 2013, the State filed a motion for more definite statement, arguing that the amended petition was so vague or ambiguous that it could not reasonably prepare a response. The court denied the motion, finding that issues 1 through 6, starting on page 6 of the amended petition, were stated with "sufficient specificity." The State filed its answer on October 11, 2013.

On January 15, 2014, Lamasters filed a brief in support of his petition. The State filed its merits brief on April 1, 2014. On June 6, 2014, Judge McManus referred this matter to me for a report and recommendation.

## *II. PROCEDURAL HISTORY*

On April 5, 2005, a jury found Lamasters guilty of murder in the first degree. On May 13, 2005, Lamasters was sentenced to serve the remainder of his life in prison. Lamasters filed a timely appeal. On October 25, 2006, the judgment was affirmed by the Iowa Court of Appeals.[2] Lamasters' application for further review was denied by the Iowa Supreme Court on January 11, 2007.

On February 14, 2007, Lamasters filed an application in the Iowa District Court for post-conviction relief. The application was denied by the district court on December 22,

---

[1] The petition was initially filed in the United States District Court for the Southern District of Iowa. At that time, Lamasters was apparently an inmate at the Iowa State Penitentiary in Fort Madison. However, because the underlying conviction occurred in the Northern District of Iowa, the case was transferred to this district on January 9, 2013.

[2] *See State v. Lamasters*, 725 N.W.2d 659 (Table), 2006 WL 3018129 (Iowa App.).

2010. Lamasters filed a timely notice of appeal. On December 21, 2011, the Iowa Court of Appeals affirmed the denial of post-conviction relief.[3] After granting further review, the denial of Lamasters' application for post-conviction relief was affirmed by the Iowa Supreme Court on October 19, 2012.[4]

On December 10, 2012, Lamasters filed the instant action in federal court for *habeas corpus* relief.

## *III. RELEVANT FACTS*

### *A. Direct Appeal*

In affirming the judgment and sentence, the Iowa Court of Appeals described the facts underlying Lamasters' conviction:

> Lamasters was living with Patricia Rapacki in Jesup, Iowa, along with her two daughters from previous relationships. On December 27, 2003, Lamasters and Rapacki took the children to visit their respective fathers for the holidays. Rapacki was not seen alive again.
>
> Lamasters spent the next several days extensively using methamphetamine. He sold the television and some of the furniture from the couple's home. He told friends and acquaintances various stories about Rapacki's whereabouts. He stated at times she was gambling in Minnesota, and at others she was gambling in Dubuque. Rapacki did not appear to pick up her children at the appointed time. Lamasters told one of the fathers that Rapacki had gotten drunk in Waterloo and put her car in the ditch, so she would be unable to pick up her child as scheduled. He told the other father a friend had been injured in Minnesota, so he and Rapacki were going up there and would not be able to pick the child up at the time they had agreed upon.

---

[3] *See Lamasters v. State*, 310 N.W.2d 25 (Table), 2011 WL 6669117 (Iowa App.).

[4] *See Lamasters v. State*, 821 N.W.2d 856 (Iowa 2012).

On January 6, 2004, a deputy sheriff in Raymond, Iowa, noticed a car parked in front of a bank that was not yet open. The deputy drove by, and the car moved to a convenience store. The deputy then started to drive to the convenience store, when the car took off at a high rate of speed. The deputy chased the car until it stopped in a farm field. The driver, Lamasters, took off running. The deputy called for back-up, and a search of the farm field was made. Officers found Lamasters lying in a ditch with self-inflicted stab wounds to his abdomen. He was taken to the hospital.

Officers discovered the car driven by Lamasters was registered to Rapacki, and her purse was in the trunk. Officers questioned Lamasters at the hospital on January 6 and 7 without giving a Miranda warning. At that time officers did not suspect foul play, but wanted to know Rapacki's whereabouts because her car had been used in a high-speed chase. Lamasters stated Rapacki was gambling in Dubuque, and he was taking her purse to her. On January 7, officer Jane Wagner asked Lamasters if he believed Rapacki might have been harmed in some way. Lamasters replied, "They can tell time of death, right? And her time of death will state that I was not—or will show that I was not there."

Lamasters was questioned more extensively on January 9 and 11, while he was still in the hospital. On these occasions he was read his Miranda rights. Lamasters was released from the hospital on January 12, 2004. Methamphetamine had been found in the vehicle Lamasters was driving, and he was taken to jail for drug-related charges and parole violations.

Later on January 12, special agents with the Division of Criminal Investigation (DCI) and local officers executed a search warrant at Rapacki's home. They found a blood stain on the living room carpet, which was found to match the DNA of Rapacki.

In the basement, Rapacki's body was found inside a locked freezer. She had been killed by ligature strangulation with an electrical cord. DNA evidence showed Lamasters's blood was

> on the collar of Rapacki's sweater. His blood was also on a small piece of electrical cord on the floor outside the freezer. In addition, Lamasters's blood was on the inside of a knot in the electrical cord around Rapacki's neck. Four cigarette butts were found on the floor by the freezer, one matching Lamasters, two matching Rapacki's estranged husband, Jeff Rapacki, and one unknown. The key for the freezer lock was found in the car Lamasters had been driving during the police chase.

*State v. Lamasters*, 725 N.W.2d 659 (Table), 2006 WL 3018129, *1-2 (Iowa App.) (quoted verbatim in *Lamasters v. State*, 821 N.W.2d 856, 859-860 (Iowa 2012)).

In his direct appeal, Lamasters raised two issues: First, Lamasters argued that the district court erred by failing to exclude evidence of his flight from police; and second, Lamasters claimed that the district court erred when it failed to suppress statements which he gave to police prior to receiving a *Miranda* warning. In affirming Lamasters' conviction, the Court of Appeals rejected both arguments. The Court concluded that the district court did not abuse its discretion in allowing the State to present evidence of Defendant's flight, "because it is probative of consciousness of guilt." *Id.* at *3. Furthermore, the Court concluded that Lamasters was not in custody when he was questioned by police officers at the hospital and, therefore, "his statements were admissible, despite the lack of *Miranda* warnings. *Id.* at *4.

### *B. Application for Post-Conviction Relief*

In an application for post-conviction relief, filed *pro se* on February 14, 2007, Lamasters again challenged the admissibility of statements made by him while he was in the hospital. In an amended application for post-conviction relief, filed with the assistance of counsel on August 25, 2009, Lamasters identified six issues:

> 1. Ineffective assistance of Appellate Counsel on failing to raise on Appeal the Trial Court denial of bifurcation on the issues of Guilt and an insanity defense.

2. Ineffective assistance of Appellate Counsel on failing to raise on Appeal the failure of the Trial Court two issues and instruction on spoliation of evidence.

3. Ineffective assistance of Trial Counsel on failing to pursue a defense of temporary insanity.

4. Ineffective assistance of Trial Counsel in failing to present adequate and available evidence to support a claim of bifurcation of issues of guilt and insanity or diminished capacity defense.

5. Ineffective assistance of Counsel in permitting the change of venue to Grundy County to be uncontested and failing to require moving the case to a different media market.

6. Ineffective assistance of Appellate Counsel in failing to raise on Appeal the Trial Court denial of Defense Motion to Suppress evidence obtained by a search warrant.

Amended Application for Post Conviction Relief. A second amended application for post-conviction relief was filed on about September 30, 2009, adding six additional grounds for relief:

1. That Trial Counsel was ineffective in failing to present available testimony from Dr. Dolan of Waterloo, Iowa regarding time of death of the victim in the underlined criminal action.

2. That Trial Counsel was ineffective in failing to obtain and present an expert to examine cigarette butts found near the body of the victim to determine the date of manufacturer. Such information would have further supported the Petitioners claim that another person had opportunity to commit the crime.

3. Trial Counsel Dave Dunakey failed to proved effective assistance of Counsel by refusing to take additional

action as the case drew to a close. Mr. Dunakey sites personal reasons as his basis for failing to take advantage of available testimony and witnesses for presentation at Trial.

4.  Defense Counsel was ineffective by failing to obtain Counseling and medical assistance known to Counsel David Dunakey would likely assist Petitioner in regaining memory of events leading up to his arrest.

5.  Defense Counsel was ineffective by failing to acknowledge significant hearing loss which prevented him from being able to adequately observe and participate in the Trial proceeding.

6.  Defense Counsel was ineffective in failing to address the mental state of Petitioner to obtain adequate medical care to permit Petitioner to effectively assist in preparing and presenting his defense at Trial.

Second Amended Application for Post Conviction Relief.

The application for post-conviction relief came on for hearing before the district court on November 18, 2010. According to the district court's ruling on Lamasters' application for post-conviction relief, Lamasters conceded in his trial brief that there "are no substantial bases" for several of his claims. Specifically, Lamasters abandoned his claims that trial counsel was ineffective in permitting the change of venue to Grundy County, in failing to obtain an expert to examine cigarette butts found near the freezer which contained the victim's body, and in failing to obtain counseling and medical assistance to assist Lamasters in regaining his memory of events leading up to his arrest. Lamasters also abandoned his claims that appellate counsel was ineffective for failing to appeal the trial court's refusal to instruct on spoliation and in failing to object to evidence obtained pursuant to a search warrant. Accordingly, at the hearing on the application for post-conviction relief, only four issues were remaining for disposition by the district court:

(1) Whether trial counsel and appellate counsel rendered ineffective assistance of counsel by failing to raise the issues of temporary insanity or diminished capacity,

(2) Whether trial counsel and appellate counsel rendered ineffective assistance of counsel by failing to raise the issues of bifurcation of trials on guilt and temporary insanity,

(3) Whether counsel rendered ineffective assistance of counsel by failing to present testimony by the medical examiner as to the time of death, and

(4) Whether trial counsel, David Dunakey, hearing problems and personal distractions caused counsel to render ineffective assistance of counsel.

Ruling on Application for Post-Conviction Relief, at pp. 2-3. The district court found no ineffective assistance of counsel and, therefore, denied Lamasters' application for post-conviction relief.

*C. Appeal of Post-Conviction Denial*

Lamasters filed a timely notice of appeal from the district court's order denying his application for post-conviction relief. On appeal, Lamasters claimed that his trial counsel was ineffective for (1) failing to raise issues of temporary insanity and/or diminished capacity, and (2) failing to sufficiently support the request for bifurcation of his trial. *Lamasters v. State*, 2011 WL 6669117 at *1. The Iowa Court of Appeals affirmed the denial of Lamasters' application for post-conviction relief, but without reaching the merits. That is, the Court concluded that Lamasters had failed to properly preserve any error for appellate review.

The Iowa Supreme Court subsequently accepted the appeal for further review. On October 19, 2012, the Supreme Court concluded that Lamasters' claims were properly preserved for appeal, but found that they lacked merit. After an extensive discussion, the Court rejected Lamasters' claims that trial counsel was ineffective for failing to raise the

issues of temporary insanity and diminished capacity, or was ineffective in failing to sufficiently support the request for bifurcation. The Court also rejected Lamasters' claim that appellate counsel was ineffective in failing to raise the issue of bifurcation on appeal. *Lamasters v. State*, 821 N.W.2d at 866.

## *IV. STANDARD OF REVIEW*

Before addressing Lamasters' claims, I pause to identify the standard of review given to applications for a writ of *habeas corpus* on behalf of a person in state court custody. Pursuant to 28 U.S.C. § 2254, a writ of *habeas corpus* shall not be granted with respect to any claim adjudicated on the merits in state court, unless it is established that the state court decision was contrary to clearly established federal law, involved an unreasonable application of clearly established federal law, or the decision was based on an unreasonable determination of the facts.

> An application writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the federal *habeas corpus* statute, 28 U.S.C. § 2254, and "placed a new restriction on the power of federal courts to grant writs of *habeas corpus* to state prisoners." *Williams v. Taylor*, 529 U.S. 362, 399 (2000). In determining whether a petitioner is entitled to relief,

the Court exercises "only limited and deferential review" of the underlying state court decision. *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). AEDPA modified the federal court's role in reviewing state prisoner applications "in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 603 (2002).

Preliminarily, the Court must determine whether the Petitioner exhausted his remedies in state court. That is, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). *See also Baldwin v. Reese*, 541 U.S. 28, 29 (2004) ("Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies."); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("The state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").

Regarding the merits of a claim, "federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court, § 2254(d)(1); or that it 'involved an unreasonable application of' such law, § 2254(d)(1); or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court, § 2254(d)(2)." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011) (citation omitted). Thus, the statute identifies two types of erroneous decisions, those of law and those of fact. *Weaver v. Bowersox*, 241 F.3d 1024, 1029 (8th Cir. 2001).

A state court decision can be "contrary to" federal law in one of two ways: First, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or second, "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." *Williams*, 529 U.S. at 405-06. An "unreasonable application" of

federal law can also arise in two ways: First, if the state court correctly identifies the governing legal rule, but unreasonably applies it to the facts; and second, if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Id.* at 407. Federal *habeas corpus* relief may also be granted when the state court's decision "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). In this regard, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The burden is on the petitioner to rebut the presumption of correctness by clear and convincing evidence. *Id.*

In its recent *Harrington* opinion, the Court emphasized the limited authority which the federal court may exercise in a habeas proceeding brought by a state court prisoner.

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington*, 131 S. Ct. at 786-87.

## *V. DISCUSSION*

In his amended petition for *habeas* relief in the instant action, Lamasters raises six issues:

(1) Ineffective assistance of trial counsel when the attorney "was mentally and physically exhausted from working this case and would no longer put in further effort."

(2) Jury misconduct by jurors attending during the trial a social gathering (party) with the victim's family in attendance.

(3) Abuse of discretion by the trial judge "for allowing proven perjury/lying testimony to be admitted as evidence."

(4) Failure by counsel to raise the issue of bifurcation to sufficiently support the request for bifurcation and failure to present "viable defense as supported by multiple expert witnesses."

(5). Admission of evidence "gained pursuant to an unconstitutional search and seizure."

(6) "Failure to recuse or excuse all jurors who knew victim or victim family as well as previous negative exposure via telephone, radio verbal conversations and newspapers."

Amended Petition for Habeas Corpus (docket number 10) at 6-8. I will address each of the arguments in turn.

### A. *Ineffective Assistance of Counsel*

The first issue identified by Lamasters in his amended petition is an alleged "denial of effective assistance of counsel." Specifically, Lamasters asserts that one of his trial attorneys told the judge that "he was mentally and physically exhausted from working this case and would no longer put in further effort." In the post-conviction proceeding, the district court identified one of the issues remaining for disposition as "whether trial counsel, David Dunakey, hearing problems and personal distractions caused counsel to render ineffective assistance of counsel." The judge rejected Lamasters' argument, finding

that "[n]othing in this record reflects that either Mr. Dunakey or Mr. Metcalf failed in any essential responsibility to Mr. Lamasters based upon a hearing deficiency or personal problems."[5]

Lamasters appealed the adverse post-conviction ruling. However, the issues presented on appeal did *not* include a claim that one of his trial attorneys was ineffective due to mental and physical exhaustion. Neither the Iowa Court of Appeals, nor the Iowa Supreme Court on further review, was given an opportunity to address the district court's denial of relief on that ground. Instead, the only issues pursued on appeal in the post-conviction proceeding were counsels' failure to raise issues of temporary insanity and diminished capacity, or to sufficiently support the request for bifurcation.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies." *Baldwin*, 541 U.S. at 29. *See also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State."). A petitioner has exhausted his state remedies when he has provided the highest state court with a full and fair opportunity to consider all the claims before presenting them to the federal court. *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). *See also Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) ("[T]o preserve a claim for relief, a state habeas petitioner must present that claim to the state court and allow that court an opportunity to address his claim."). "A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims." *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010).

Because Lamasters did not appeal this issue in state court, and because the Iowa Supreme Court was not given an opportunity to address the issue, Lamasters failed to

---

5 Ruling on Application for Post-Conviction Relief at 3.

"exhaust" his remedy in state court. Accordingly, even *if* the claim was otherwise meritorious, it cannot be the basis for federal *habeas corpus* relief.

*B. Jury Misconduct*

Next, Lamasters claims that jurors attended a party with the victim's family during the course of the trial. As far as I can tell, this is the first time that Lamasters has made the allegation. It was not raised on direct appeal, it was not included among the 12 issues raised by Lamasters for post-conviction relief, and it was not included in the appeal from the adverse post-conviction ruling. Furthermore, Lamasters has not pointed to any evidence in this record to support his claim.

As discussed above, an application for *habeas* relief in federal court cannot rely on a claim which was not raised in state court. *O'Sullivan*, 526 U.S. at 842 ("The state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a *habeas* petition."). Because he failed to exhaust this issue in state court, Lamasters cannot rely on it for federal *habeas* relief.

*C. Admission of Perjured Testimony*

In his third claim for relief, Lamasters asserts that the trial judge allowed "proven perjury/lying testimony" to be admitted at trial. Lamasters does not identify the testimony which he believes was perjured, and the Court will not speculate in that regard. Even if the Court was able to determine what testimony Lamasters is complaining about, however, he failed to raise the issue on direct appeal, in his post-conviction proceeding, or on appeal of the adverse post-conviction ruling. Accordingly, Lamasters did not exhaust the issue in state court and, therefore, it cannot be the basis for federal *habeas corpus* relief.

*D. Bifurcation and Mental-Health Defenses*

In his amended petition for *habeas corpus* relief, Lamasters identifies the fourth issue as "failure to raise issue of bifurcation, failure to sufficiently support the request for bifurcation, failure to present viable defense as supported by multiple expert witness." Unlike his previous claims, Lamasters raised these issues in state court and they were ruled

on by the Iowa Supreme Court. In affirming the district court's denial of Lamasters' application for post-conviction relief, the Iowa Supreme Court rejected Lamasters' claims that trial counsel was ineffective for failing to raise the issues of temporary insanity and diminished capacity, or was ineffective in failing to sufficiently support the request for bifurcation. The Supreme Court also rejected Lamasters' claim that appellate counsel was ineffective in failing to raise the issue of bifurcation on appeal. Because these issues were properly exhausted in state court, this court must determine whether the Iowa Supreme Court's holding was contrary to federal law, involved in unreasonable application of federal law, or was based on an unreasonable determination of the facts. *Harrington*, 131 S. Ct. at 785.

In its extensive ruling, the Iowa Supreme Court thoroughly discussed the law regarding a defendant's right to effective assistance of counsel. *Lamasters v. State*, 821 N.W.2d at 866-67. The Court specifically addressed Lamasters' claim that ineffective assistance of counsel resulted from a failure to present a defense of temporary insanity and/or diminished capacity, *id.* at 867-69, and the alleged failure to sufficiently support a request for bifurcation, *id.* at 869-72. I will not prolong this discussion by rehashing the Iowa Supreme Court's lengthy analysis. In *Harrington*, the United States Supreme Court found that *habeas* relief under § 2254(d) is preserved "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." 131 S. Ct. at 786. That is, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 787. It is clear that Lamasters has failed to make that showing here.

### *E. Unconstitutional Search and Seizure*

For his fifth argument, Lamasters asserts that his conviction was "obtained by use of evidence gained pursuant to an unconstitutional search and seizure." Again, Lamasters

fails to provide any detail regarding the basis for his claim. In any event, it was not raised by Lamasters before the Iowa appellate courts, and therefore the issue was not exhausted in state court. Accordingly, it cannot be relied upon by Lamasters in a federal *habeas* proceeding. *O'Sullivan*, 526 U.S. at 842.

### *F. Jury Selection and Media Exposure*

The final issue raised by Lamasters in his amended petition for *habeas corpus* relief appears to have two parts. First, Lamasters complains that jurors who knew the victim or her family were not excused. Also, Lamasters complains of "previous negative exposure" by various news outlets. While it is not entirely clear, this argument may be related to Lamasters' objection to the trial not being moved further from Buchanan County.

Lamasters has not pointed to anything in the record which suggests that he previously raised the issue of errors during jury selection. Clearly, the issue was not raised by Lamasters on direct appeal, in the post-conviction proceeding, or on appeal from the adverse post-conviction ruling. The change of venue issue was raised in the post-conviction proceeding and described as "ineffective assistance of counsel in permitting the change of venue to Grundy County to be uncontested and failing to require moving the case to a different media market." By the time the application for post-conviction relief came on for hearing, however, Lamasters conceded in his trial brief that he had no substantial basis for claiming that trial counsel was ineffective in "permitting the change of venue to Grundy County." Accordingly, the issue was not submitted in the post-conviction proceeding and, obviously, was not appealed to the Iowa Supreme Court. As previously noted, in seeking federal *habeas* relief, a state prisoner is limited to those issues raised and exhausted in state court. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991) ("[A] state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his claims.").

## *VI. CONCLUSION*

Lamasters is not entitled to relief pursuant to 28 U.S.C. § 2254. The only issues preserved in state court were whether trial counsel was ineffective for failing to raise the issues of temporary insanity and diminished capacity, or whether trial counsel and appellate counsel were ineffective in failing to sufficiently support a request for bifurcation. Those issues were thoroughly addressed by the Iowa Supreme Court in its decision affirming a denial of Lamasters' application for post-conviction relief. The Court's decision was not contrary to federal law, did not involve an unreasonable application of federal law, and was not based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). None of Lamasters' remaining claims were pursued before the Iowa Supreme Court and, therefore, were procedurally defaulted and cannot form the basis of federal *habeas* relief.

## *VII. RECOMMENDATION*

For the reasons set forth above, I respectfully recommend that the district court deny Petitioner's Application for Writ of Habeas Corpus. The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this 11th day of September, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA